|   |   |   |
|---|---|---|
| 1 | **UNITED STATES DISTRICT COURT** | |
| 2 | **DISTRICT OF NEVADA** | |
| 3 | Edd A. Ahrens, | Case No.: 2:15-cv-02034-JAD-NJK |
| 4 | Plaintiff | |
| 5 | v. | |
| 6 | Suzette A. Pecnick, Windermere Holdings Group Limited, Keep2Share Corporation, and Artem Shepelev, | **Order Denying Without Prejudice Plaintiff's Motion for Entry of Default Judgment against Keep2Share Corporation** |
| 8 | Defendants | [ECF No. 19] |

Plaintiff Edd Ahrens creates and sells pregnancy pornography. He sues the defendants for allowing infringing copies of his videos to be posted on the defendants' websites. The Clerk of Court entered a default against one of these defendants, the British-based Keep2Share Corporation, and Ahrens now seeks a default judgment against it. In deciding whether to grant default judgment, I consider a number of factors—chief among them whether I even have jurisdiction over the case. And Ahrens fails to establish that I do.

Because Keep2Share is a foreign company, I have personal jurisdiction only if it has sufficient contacts with the United States. Even taking Ahrens's factual allegations as true, which I must on a motion for default judgment, there is no indication that Keep2Share has any contact whatsoever with the U.S. Ahrens effectively argues that posting an infringing image on a foreign website is enough to subject Keep2Shareto jurisdiction anywhere that the website can be accessed—in other words, everywhere on earth. But the Supreme Court has made clear that this is not the case: Keep2Share must have taken some intentional act and targeted that act at the United States. And Ahrenss offers no specific allegations indicating that it has.

Even if Ahrens had established that this court has personal jurisdiction over Keep2Share, his damages calculations are too speculative. He contends that I should award him damages for a hypothetical license of his videos, but he offers little factual basis for his figures. He contends that I should also award him actual damages, but he similarly fails to provide enough specific facts to

support his request. I thus deny his motion without prejudice.

**Background**

Ahrens's complaint alleges 289 causes of action against the defendants for infringing his copyrights and committing other related torts. Ahrenss does not allege that the defendants affirmatively copied his videos on their own; he alleges that the defendants run websites that allow users to upload infringing videos and that the defendants are liable for permitting this to happen.[1]

Keep2Share is a British company that allows users to upload and download videos for free. Keep2Share allegedly makes revenue from this video trading by advertising to users and by allowing users to pay extra fees for higher download speeds.[2] Ahrens learned that Keep2Share and the other defendants were operating websites that permitted users to upload and download his copyrighted videos. So he sent letters to Keep2Share asking that the infringing videos be pulled from its site.[3] Keep2Share refused to do so, prompting Ahrens to file this suit.

**Discussion**

**A.     Ahrenss has not established that I have personal jurisdiction over Keep2Share.**

Before getting to the merits of a default judgment motion, I have an "affirmative duty to look into [my] jurisdiction over both the subject matter and the parties."[4] Ahrenss argues that Keep2Share is subject to personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). This rule allows plaintiffs to establish personal jurisdiction over foreign entities. A plaintiff must show three things under Rule 4(k)(2): (1) the claim arises under federal law, (2) "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction," and (3) exercising jurisdiction is consistent with the United States Constitution. The first two are met here. Ahrenss asserts federal copyright infringement claims and there is no indication that Keep2Share has a presence in any U.S. state. The jurisdictional analysis thus boils down to the third element, which "is nearly identical to

---

[1] ECF No. 1 at 6–21.

[2] *Id.*

[3] *Id.*

[4] *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] and the forum state, [I] consider contacts with the nation as a whole."[5]

The question, then, is whether Keep2Share has sufficient minimum contacts with the United States so that maintenance of the suit here does not offend "traditional notions of fair play and substantial justice."[6] I consider whether (1) the defendant purposely directed conduct at the forum, (2) the claim arises out of the defendant's forum-related activities, and (3) the exercise of jurisdiction comports with fair play and substantial justice.[7]

### 1. Purposeful direction

To purposefully direct activities at the United States, a defendant must (1) commit an intentional act, (2) expressly aimed here, (3) that causes foreseeable harm here.[8] It is not enough that the defendant's acts might create "foreseeable effects in the forum state."[9] And it is not enough that a defendant knew that the victim of his tortious activity resides in the U.S.[10] "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."[11]

---

[5] *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007).

[6] *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945).

[7] *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011).

[8] *Id.*

[9] *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) (citation and quotation marks omitted).

[10] *Walden v. Fiore*, 134 S.Ct. 1115, 1121–25 (2014).

[11] *Id.* Ahrens urges me to ignore the Supreme Court's recent caselaw that centers the jurisdictional analysis on the defendant's actions, and that I should instead focus on whether the victim suffers injuries in the forum. But the Supreme Court has expressly stated that it's the defendant's acts that matter. *Id.; see also Poor Boy Prods. v. Fogerty*, 2015 WL 5057221, at *4 (D. Nev. Aug. 26, 2015) ("The Supreme Court has recently reaffirmed that 'purposeful direction' or 'express aiming' is not satisfied merely by a defendant committing an intentional tort against a plaintiff he knows is a resident of the forum state and that the effects of the act will be felt in that state."). Ahrens also suggests that if this approach is applied to foreign companies in the context of the internet, companies will never be subject to personal jurisdiction. Not so. *See, e.g., AMA Multimedia LLC v. Sagan Ltd.*, 2016 WL 5946051, at *1 (D. Ariz. Oct. 13, 2016) (finding personal jurisdiction over foreign pornography website owner based on copious evidence that the owner targeted marketing

The Supreme Court has recently made clear that a defendant is not subject to personal jurisdiction in a state merely because the victim of his tort lives there. In *Walden v. Fiore*, two airline passengers sued a Georgia police officer, alleging that the officer violated their rights by seizing cash in Georgia that the couple was transporting to their home in Nevada. The couple sued the officer in Nevada, but the Supreme Court ultimately held the Nevada court did not have personal jurisdiction over the officer. This was so even though the officer allegedly converted the property of two Nevada residents. The High Court clarified that "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."[12]

Courts "have struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed."[13] But the Ninth Circuit has concluded that maintaining "a passive website alone cannot satisfy the express aiming prong."[14] Instead, the defendant must do something else that "directly target[s] the forum."[15] In looking for this directed activity, the Ninth Circuit has considered "the geographic scope of the defendant's commercial ambitions," and "whether the defendant 'individually targeted' a plaintiff known to be a forum resident."[16] For example, the Ninth Circuit held that a defendant purposely directed activity into California by operating his celebrity-photo website because he sold advertising space to business that targeted California, a substantial number of the website's visitors resided in California, and the defendant derived revenue from California residents.[17]

Ahrenss argues that Keep2Share purposely directed activity towards the U.S. merely because it infringed a copyright that a U.S. resident owns—a theory that the Supreme Court disavowed in

---

and sales to U.S. customers).

[12] *Id.*

[13] *Mavrix*, 647 F.3d at 1229.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

4

*Walden* and other cases. It is not enough that Keep2Share harmed a U.S. resident; there must be evidence that Keep2Share affirmatively directed activity at the U.S. And Ahrens offers no other specific allegations from which I can deduce that Keep2Share has any relationship whatsoever with the U.S. There is no indication that Keep2Share has any U.S. customers, that it advertises to anyone in the U.S., that it profits from anyone in the U.S., or that it otherwise has benefitted from or had any other meaningful contact with the U.S. Indeed, Ahrens does not allege that Keep2Share has profited from a single U.S. resident. Ahrens has thus failed to show that Keep2Share purposely directed any activity at the U.S.[18]

### 2. Arising out of the defendant's forum-related conduct

A claim arises out of a defendant's forum-related activities if the plaintiff would not have been injured "but for" the defendant's contact with the forum. The "but for" test "preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum."[19]

Assuming that Ahrens could establish that Keep2Share has some contact with the U.S., that contact must relate to Ahrens's claims. Because Ahrens has not established that Keep2Share has had any contacts with the U.S. in the first place, he obviously cannot show that its contacts are related to his alleged copyright injuries. Ahrens has thus failed on this prong as well.

### 3. Reasonableness

Finally, I consider whether the exercise of jurisdiction is reasonable and otherwise comports "with 'fair play and substantial justice.'"[20] I consider: "(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5)

---

[18] The only specific fact that ties Keep2Share to the U.S. is that somewhere on its website it mentions the U.S. Copyright Act. But that is far afield from establishing that Keep2Share is purposely directing any activities towards the U.S.

[19] *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), overruled on other grounds by 499 U.S. 585; *see also Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1052 n.7 (9th Cir. 1997) ("Although *Shute* has been questioned, the 'but for test' remains viable.").

[20] *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1322 (9th Cir. 1998), holding modified by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006).

the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."[21] No factor is dispositive.[22]

Given that Keep2Share is a foreign company, I must give serious weight to the burden it faces in litigating a case here. Based on Ahrens's specific allegations, I cannot discern any purposeful activity directed at the U.S. And Ahrens offers no argument or evidence as to potential conflicts with Britain, Britain's interest in this dispute, or the existence of an alternative forum in Britain for his claims. So Ahrens fails on this factor as well. He therefore has not established that I have personal jurisdiction over Keep2Share.

**B.     Even if I had personal jurisdiction over Keep2Share, Ahrens has not established that default judgment is warranted.**

Federal Rule of Civil Procedure 55 provides a mechanism for obtaining a default judgment against a party who has failed to respond to claims brought against it. A district court has discretion to enter a default judgment, which typically turns on the consideration of the seven *Eitel* factors: (1) potential prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the amount of money at stake in the action; (5) the potential disputes as to material facts; (6) whether the default was due to excusable neglect; and (7) the strong federal policy favoring adjudications on the merits.[23]

At this point, Ahrens has failed to support any of his damages calculations, so even if I had jurisdiction, I could not enter default judgment in his favor. Ahrens first claims that he should be awarded $527,479.40 in damages to his copyright. He derives this figure from a hypothetical-license theory. In a copyright-infringement case, damages "are the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement."[24] This market value can be

---

[21] *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002).

[22] *Id.*

[23] *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

[24] *Frank Music Corp. v. Metro-Goldwyn Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir. 1985).

6

determined based on a hypothetical-license theory, under which I "look to 'the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work.'"[25]

Crucially, determining the fair market value of a hypothetical license is an objective test, not a subjective one.[26] The Ninth Circuit has explained that, without evidence of a "range of reasonable market value[s]" for the hypothetical license, any damages award is too speculative to support a judgment.[27] The plaintiff must therefore submit sufficient evidence from which the fact finder can determine that a proposed license reflects not what he would like to charge but "what a willing owner actually would have charged after negotiation with the buyer."[28]

Ahrens offers virtually no evidence to support either his proposed hypothetical license rate or how that license should apply to Keep2Share. Ahrens calculates his license rate by citing a single example of a deal in which he agreed to license his videos to a third party for a royalty payment on each download.[29] But that Ahrens entered into a single arrangement to market his videos does not establish that his proposed license fee is reasonable. He offers no other evidence suggesting that his proposed license price is reasonable under the circumstances. And even as to this one example license, Ahrens offers no information about its terms so that I could determine whether the rate might apply to a hypothetical negotiation with Keep2Share. Another problem: Ahrens says that his license rate is $12.95 per a download, but he later avers that he receives only a percentage of this rate, not the entire download cost.[30] Taking Ahrens's allegations at face value, his proposed license value should be much less.

Even if Ahrens had established that his hypothetical-license rate were reasonable, his

---

[25] *Oracle Corp. vs. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014).

[26] *Id.* at 1187.

[27] *Id.*

[28] *Id.*

[29] ECF No. 19-2 at 3–4.

[30] Ahrens avers that he receives a variable percentage of the $12.95 download rate. ECF No. 19-2 at 4–5.

7

application of the rate to Keep2Share is also speculative. Ahrens calculates his damages by multiplying his proposed rate of $12.95 per a download to the number of times that users viewed the webpage where Ahrens's videos were posted with Keep2Share. But just because someone visited a webpage does not mean he actually downloaded an infringing copy of a work. Without more evidence, we have no way to know whether the number of downloads is 10 or 10,000.

Ahrens also seeks actual damages in the form of Keep2Share's profits derived from using Ahrens's videos. Ahrens calculates this figure by stating that he "believes" that at least 90% of all users of Keep2Share's website pay for a premium downloading plan. He then claims that he is entitled to the revenue that Keep2Share made when it sold a premium account to a user who downloaded one of Ahrens's videos. But Ahrens offers no evidentiary basis for his conclusion that 90% of Keep2Share's users pay for a premium service or that every single one of Keep2Share's users who visited the page where Ahrens's videos were linked actually downloaded them. And he provides no evidence or explanation for how all of Keep2Share's revenue derived from selling its premium download accounts should be attributable to his copyrighted videos. Presumably, Ahrens's videos make up a small portion of Keep2Share's offerings, and thus Ahrens would not be entitled to all of the profits.

Ahrens admits that he does not know the "full measure" of his damages because he has not yet done any discovery. But without evidence making his damages claims more certain, I cannot order judgment in his favor. I therefore find that Ahrens's damages request is lacking the level of documentary proof necessary to justify the damages he requests. Should he file a renewed motion for default judgment, he is cautioned that failure to include properly authenticated support for the requested damages amount will result in the continued denial of his motion.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's motion for default judgment **[ECF No. 19] is DENIED** without prejudice.

Dated this 11th day of July, 2017.

_____
Jennifer A. Dorsey
United States District Judge